Council for the appellant. You may proceed. Yes. In returning B.B. to his abuse in Ecuador, the trial court called B.B. the child. Counsel, this is Judge Kula. Is B.B. in Ecuador now? The child is in Ecuador now, yes. All right. Continue. The child is in Ecuador, and he's at grave risk, and the court should correct that decision. Well, when you say he's at great risk, have there been any proceedings, Judge Lynch, I'm sorry, have there been any proceedings in the court in Ecuador with respect to either custody or child endangerment or anything else? No, Your Honor. The father, the abuser, was supposed to start custody proceedings, and he has not done so to date. Are you saying, this is Judge Walker, are you saying that the boy is in grave risk based upon the information that was presented prior to his being returned to Ecuador, or has something new happened that has caused you to say this? No, it's based on the evidence that was adduced at trial, which is summarized in 45 pages in my opinion, and that led the court to repeatedly find that the child was at grave risk if returned to Ecuador. But the district court also concluded that, first of all, that there wouldn't have been grave risk but for your client's, Ms. Castro's, decision to stay in the United States and send the child down, and secondly, that there was an agreement in place between Mr. Rubio and your client as to mitigations events that would take place, and that was all agreed upon, and I think it was understood that the Ecuadorian courts would have had the capability of enforcing that agreement, and so there was an agreement, and that agreement is what sent the boy back down to Ecuador. So, why wasn't that satisfactory then, that there was an agreement in place? Yeah, the agreement, what you call the agreement in place, the joint status update, had nothing to do with the court's decision below. The court issued its decision on October 15th. It refused a stay of its decision on November 13th, and then the joint status update was submitted to the court on November 18th, and the district court has done nothing with regard to it. We haven't discussed it with her. We haven't done anything. Excuse me, Mr. Greiver, this is Judge Lynch. I take your point that the district court made its decision before that agreement was entered, but the district court also made a finding, did it not, that the courts of Ecuador would be fully capable of protecting the child against that risk. Wasn't that a finding of the district court? The district court did make that finding, however, she made that finding based on both of the parents being in Ecuador and being there to tussle over the child. No, I don't think that's quite accurate, Mr. Greiver. She made the finding that the courts of Ecuador would be capable of protecting the child, period. Then she asked the parties to make some arrangements for effectuating the order. The parties then entered a kind of agreement, and you did not ask. No one asked the district court, as far as I can tell from the record, to so order that agreement. No one went back to the court and said, as you might have said, well, look, this is the But we don't think it's sufficient, and here's why. And therefore, you should revisit your order in light of what we think would be the only kind of way of making this happen. But none of that occurred. Okay. Two things. First, the court based its decision as to the Ecuadorian courts and what the Ecuadorian The fact that there is no evidence on the record developed below as to what happens now is that no one on this call, not the court, not me, not opposing counsel, knows what the Ecuadorian courts can or will do to protect the child in a situation where one parent isn't there and the child is in the exclusive control of his abuser. Well, when you say exclusive, excuse me, when you say exclusive control, was there not an agreement by Mr. Rubio to permit free access by telephone of the child to your client during this period? That was the agreement, wasn't it? Correct. And if you have that agreement, excuse me, please. Has that agreement been complied with? No. In fact, there is an affidavit before the court, February 18th, an affidavit from an Ecuadorian attorney by the name of Javier Rubio and an affidavit from the mother that says that in fact, none of the protections within that voluntary agreement have been It is up to the district court, not the abuser, to determine what is or is not sufficient or enforceable. Well, has any effort been made either to go back to the district court in light of the violation of this agreement that you allege or to take any action in Ecuador on behalf of your client? My client is here. My client is afraid to go back to... But whether she's here or elsewhere, I've certainly presided over litigation in the United States that was brought by someone abroad who retains a lawyer in New York and files a lawsuit in New York on behalf of that person. At least in the United States, residence in the United States is not a prerequisite to filing an action. Now, I don't know whether that's true in Ecuador, but I also don't see anything in the record suggesting that it's not. But mainly I'm just asking you, has any attempt been made to get the Ecuadorian courts to do anything in this matter by your client since the child's return? I'm not aware, but Your Honor, the burden of proof is not on my client. It's not a question of the proof. It's a question of getting the Ecuadorian court involved. The boy is in Ecuador. You want custody. You want protections for the boy. And what's wrong with going to the Ecuadorian court to do that? My understanding is that your client has counsel down there. You just spoke of an affidavit filed by an attorney a minute ago. What is to prevent that attorney from walking into the Ecuadorian court to enforce whatever agreement they worked out here and also to see whether custody will be adjudicated? Okay. That Ecuadorian court is not an Ecuadorian court resident in Ecuador and does not do family law. That is the Ecuadorian court that I found in order to determine whether activity had actually been commenced in Ecuador. But the job of the courts in this country is to make sure that the child is safe until a custody determination is made, either in the United States or in Ecuador, wherever the child ends up. The safety of the child is paramount. And you haven't been able to cite to us any kind of abuse or danger or risk to this child, grave or otherwise, since the child's return. No, that's not true. That's not true, Your Honor. The point is that we don't know because the father has cut off contact with the child. He has cut off contact with the family. So we do not know. Counsel, excuse me. This is Judge Kluwer. Has the fact that the father cut off the child from speaking to his mother or anyone else, has that fact been brought to the district court's attention? No, it has not, Your Honor, because the district court ruled on this issue, sent the child back. It's been brought to this court's attention because of the attempt to use the joint status update as evidence of protective measures. And I don't think it is. It is an update to the court. Below and here, the burden of proof is on the abuser. Once abuse is found and once grave risk is found, then the burden of proof is placed on the abuser to prove that enforceable undertaking can be created that protects the child from him. That's the law of the Fourth, the Third, the Sixth, and the Eleventh Circuit. The petitioner, the father, the abuser is the one that should have shown up and said, this is the way to protect the child. And he didn't. And that's why this case had to be moved. All right. Thank you very much. Can I just ask one question, please? Are you asking us to reverse or to remand to the district court for a conclusion on whether or not there is adequate mitigation and place the appropriate burden where it should be placed? I think that the court can go two different ways. First, it could say that there's no second right at the apple. And having failed to reduce proof below the first time, the petition should just be dismissed below. At the very least, like in the SADA case and the Blondin II case, I think the court should reverse and remand to the district court so that a complete factual record can be developed and we can find out what the heck is going on with that kid in Ecuador. Okay. Thank you. Thank you, counsel. Thank you. We will reserve decision. Let's hear from the appellate. Sorry. Thank you, Your Honors. Good morning. May I please report on behalf of petitioner appellee, the child's father. The district court is not clearly. Counsel, we just heard from appellant's counsel that your client has cut the child off from any contact with his mother or her family and has not followed the rules for amelioration that the district court made part of her decision. Is that correct? Your Honor, this is the first. I'm hearing that accusation. Last, I spoke to Mr. Greiber and based on the declaration he submitted in this matter, the mother was having regular telephonic contact with her son. So, this is the first I'm hearing of that allegation. I'd have to ask my client. I do know in terms of ongoing pandemic has restricted travel both here as in Ecuador. And that may point to the reason why her family has not had the agreed on visits. But again, this is the first I've heard that allegation. I'd have to confirm. Is the father allowing the child to call the mother regularly as promised in the agreement? Yes, Your Honor. The child in fact has his own cell phone and is in regular text and communication or phone contact with his mother via his own phone. Well, what if anything, Mr. Schrodt, is in the record about those contacts? Your Honor, there's nothing in the record to substantiate any of these allegations about whether or not the agreement is complied with. In fact, the parties expressly agreed that they would resort to the Ecuadorian court to enforce the agreed on measures. So there's nothing in the record either way. Yes. As far as you know, is Mr. Is Miss Castro represented by an attorney in Ecuador? As far as I know, Your Honor, she's represented by an attorney in Ecuador. And was the original understanding, which is that she would return on May 2nd, I think it was 2019, was that understanding concretely ordered by a court down there? And if so, was it the family court or some other court? Yes, Your Honor. Your Honor, there was a family court order that after her vacation in the United States, she would return the child by May 2nd, 2018. So they've got a family court that seized with the case, at least was at one time. Correct. Yes, Your Honor. And there's nothing to prevent either party from going into that court, is there? That is correct. And in fact, when the mother failed to return by the required date, the father submitted a petition informing the family court in Ecuador of her failure. And the mother's lawyer responded while she was here. So the evidence suggests in this case, the record suggests that the mother, as she even stated in her testimony, she spoke to her Ecuadorian counsel while in the United States. And her Ecuadorian counsel submitted papers on her behalf in Ecuador. Right. Okay. Thank you. You can continue. Thank you, Your Honor. The mother's allegations of abuse for never raised part of this litigation are undoubtedly concerning. But as the district court repeatedly found, they were sporadic incidents and failed to meet her burden to satisfy the Article 13b exception. So the district court did not clearly err in determining that the mother failed to satisfy her Article 13b exception. It also did not abuse its discretion in finding that even with these allegations, the parties have produced sufficient evidence to prove that the Ecuadorian courts were capable and had been capable in prior practice of addressing their competing allegations of abuse, child custody, support and visitation. Well, Mr. This is Judge Lynch. I'm just trying to make sure I understand at least how you read. And I suppose I'll ask Mr. Greiver this on rebuttal as well, that I'm reading the district court's opinion correctly. I took the district court as holding that the respondent, Ms. Benthamia Castro, did establish a grave risk of harm and then declined in its discretion to withhold an order of return because the Ecuadorian courts could take steps to ameliorate that risk. In other words, there's two things that happen. One is the determination of whether a risk of harm exists, grave risk of harm exists, which would permit the district court to withhold an order of return. But that is permissive. That's discretionary. And then the district court here exercised its discretion not to grant such an order because the Ecuadorian courts could ameliorate the risk. Is that how you read this or do you read it differently? No, Your Honor. We read it. Well, there are. We submit that the district court found even after crediting the mother's allegations, which, again, were extremely serious, the district court found this is on special accrediting for allegations. The evidence in the record did not establish the quote unquote sustained pattern of physical abuse required by this circuit precedent. And again, at Special Appendix 94, the court found a respondent has shown sporadic rather than sustained instances of physical and emotional abuse. So are you saying that the district court actually did not find a grave risk of harm and therefore that that is the relevant decision that we should be reviewing rather than a discretionary decision about whether to apply that to act on that exception here? Your Honor, we submit that this court can affirm the judgment below either on either ground. This court may affirm it that the district court found only sporadic instances of abuse and the mother failed to meet the Article 13b threshold. But even assuming that the article that the grave risk had been established within the meaning of Article 13b, the parties produced sufficient evidence to prove the capability of the Ecuadorian court to resolve their competing allegations. And the district court's finding in that regard was not an abuse of discretion, was not clearly erroneous. Excuse me. And therefore, the decision to return the child was not an abuse of discretion. Just one other question. Where does the burden lie in approving amelioration or mitigation, however you want to describe it? Who has the burden of proving that? Isn't isn't shouldn't isn't the burden on that is the burden on the petitioner, the person who is seeking return to show that whatever risks there are will be ameliorated if the return is affected. Your Honor, two things. This court in Saratsar held that the Article 13b exception requires in cases of serious abuse or neglect, requires showing that the court of the country of habitual residence is incapable or unwilling to give the child adequate protection. And so here, the burden, both parties through factual stipulations and through testimony presented evidence that the court was capable. But the question mother put forward is if a petitioning parent puts forward proposed measures, should that burden on proving the efficacy of those measures be on the parent that is proposing them? And we don't dispute that that would be the case. But here, my client never put forward any specific ameliorative measures, so there was no burden to prove the efficacy of any particular measure. The parties here prove the capability and the ability to provide the child adequate protection. Is there agreement on that subject? On that point? I believe the mother is asking this court to overturn that finding as clearly erroneous. We submit to that base. This is Judge Kula. Wasn't the amelioration that the district court provided for based to a large extent on Ms. Castro going back to Ecuador? And isn't it true that she is not planning to do that? Ms. Castro has to date refused to return to Ecuador. But the parties post-judgment agreement states there are these forceful measures that parties have agreed on, notwithstanding the mother's refusal to return to Ecuador. But it seems that these are remedies that no one will enforce. The father is not going to go into court saying, hey, I'm not complying with this agreement. Is he? The parties agree that they would submit jointly these measures to the Ecuadorian courts for enforcement pending the final custody determination, which will be made by the Ecuadorian court. Is there anything that prevents counsel for Ms. Castro in Ecuador going into the Ecuadorian family court, the same one that set the original date of May 2nd, and saying that the amelioration has been agreed upon and establishing that fact and saying that it's not being followed. Please enforce it. Is there anything to prevent that? No, Your Honor. Mr. Shradd, may I ask one sort of irrelevant question? But I like generally to try to refer to parties by their actual names as they would refer to themselves. Is your client properly Mr. Rubio or Mr. Baez or Baez Rubio? Your Honor, his full last name is Mr. Baez Rubio, and he would usually go by Mr. Baez. Okay. Thank you. Thank you, counsel. The appellant has reserved three minutes for rebuttal. We'll turn to him now. Thank you, Your Honor. Four quick points. Number one, if you look at document 72 on the docket, it shows that the father, Baez Rubio, is not living up to what he agreed to, and those are merely his promises. Whatever contact there was, which there is no more, was supervised by him, and the agreement was that it wouldn't be supervised. There were other agreements that we don't know if he's living up to. For example, he's apparently still taking his child to the other abusers in his family and dropping them off for extended stay. He's still taking them to the warehouse and keeping them around guns. Is all of that – what is the document that you're referring to, and what exactly does it say? Okay. Document 72 is an affidavit from Ms. Castro that she put in in opposition to the joint status update, which they have put in and asked to enlarge the record. So we opposed it and put in a declaration to say that it's contested and it's not being lived up to. That's a document in this court that's in opposition to the motion? Okay. Thank you. It's a motion to enlarge. Number two, every country has a family court system. That's not the question. The mere existence of it or what may have happened in the past doesn't matter. In Blondin Falls, for example, there was testimony from a French attorney and the French government that established that the French courts could not protect the child. Similar in SADA, the abusing father promised to do certain things, and they said, until we know for sure that the Italian courts will actually protect this child, we are going to remand it. That's what should be done. As far as the voter proof being on the petition, on page 40 of my brief, I cite the cases from four different circuits that say that once you prove that someone is an abuser, it is the abuser's burden of proof to prove that measures exist that would protect the child from him. That makes absolute sense. And finally, for Mr. Seraf to say that there's nothing to prevent the Ecuadorian courts from acting, he is not an Ecuadorian attorney. He does not know what the Ecuadorian courts may or may not do, and that's precisely my point. No one knows, not the lower court, not this court, not me, not him, knows what can or cannot be done because there's been no factual findings developed below. He should have developed them in the first place because it was his burden of proof. At the very least, it should be remanded so that those facts can be developed, and a hate convention requirement, paramount requirement that the child be protected is enforced by the courts in this country. And what relief do you anticipate getting, assuming that we remand this to the district court and that the district court makes a finding that Mr. Baez Rubio has not complied with the ameliorative measures that were agreed to? Well, the court can do several things. One, she can still order him to do it. Second thing she can do is find out that since he's a scofflaw and has not been living up to it, that there's nothing that can protect the child from the father, and the child should be returned to the United States to his mother. That's also a possibility. There are several cases that say that, that there's nothing that can protect the child because of the abusive nature of the father. In fact, Judge Walker penned a decision listing several cases, you know, where there was nothing that could be done. So the child was not sent to his originating country. Yes, so this child already has been sent. That's why I'm trying to understand what's supposed to happen. Yeah, but that doesn't matter for purposes of the analysis below. The petitioner, the father, placed himself under the jurisdiction of this court system. And if the judge orders the child to return, then I trust that the father will listen to this judge and will do so. And I trust that the petitioner will show up at the additional proceedings or will show up by telephone to explain what's been happening. He came to the child. The child was found to be credible and mature, and we should hear from the child exactly what's been going on. Why, Judge Walker, why is nothing happening in Ecuador? Is it because Mr. Rubio has his son and that Ms. Castro hasn't decided to do anything down there? And she wants to focus the litigation here. Or you want to focus the litigation here. I don't know. But in any event, it seems to me that if the child is in Ecuador for a court here to be issuing orders down there, seems to Mr. Rubio, seems certainly possible. But wouldn't the logical thing be for your client to go into the Ecuadorian court and commence proceedings there to enforce the understanding? There's a U.S. Supreme Court case called Chafin and a second circuit case called Hoffman that says that even if the child has been returned to another country, in Hoffman, for example, the children have been returned to Canada, but that did not render the appeal moot. It remained a live case in controversy because of the possibility of the child being returned. Nobody is saying the appeal is moot, sir. Nobody is saying that. I'm talking about practicalities. There's no pending custody proceeding, which is normally the case in these situations. And so somebody has to start one. And it would seem to me that you would be the logical person to do that down there. I don't know. Unless you don't care. No, no, no. It's not that I don't care. The answer is I don't know because I'm not an Ecuadorian attorney. Certainly the father was supposed to begin proceeding months ago and has failed to do so. What are his incentives to do it compared to your client? He has no incentives to do it, but there could be a legal impediment to my client. Now talk about your client's incentives to do it. My client may have an incentive to do it, but my client may have a legal impediment preventing her from doing so. She's not in Ecuador. And there may be an impediment. Does she have to be present? Do you know as a matter of Ecuadorian law that she has to be present in order to start the procedures down there? No. I don't know. And that would be an excellent thing for Judge Matsumoto to develop a record on. Counsel, this is Judge Kula. Who has legal custody now? The father has legal custody now. Does he have legal custody or is it still shared custody? Oh, I'm sorry. He has custody of the child, but it is shared parental rights. He has physical custody, but he doesn't have legal custody. They share legal custody, correct? Correct. Okay. So one of them can or should move for full custody if the father should. I guess that's what Judge Walker is assessing. You're correct. And in the meantime, it is this court's responsibility to make sure the child is safe. You know, this is all very interesting as a theoretical matter, and you may very well be right. It just seems to me a rather bizarre scenario if we are really trying to protect the child. And I understand the case is not moot and the Supreme Court has said, well, it's possible that we could enter an order for the child to return and so forth. But if we're really concerned about protecting the child who is in Ecuador, it seems a very strange procedure to be spending months waiting for this court to send the matter back to a district court in New York, which will then develop a record about whether there is some legal impediment to the child's mother commencing a proceeding in Ecuador. And if the answer is, oh, there is no legal impediment, then what? Then somewhere down the road, six months from now, when that's all resolved, then maybe she will and maybe she won't avail herself of that opportunity. And for all these months, the child is in the custody of someone that you refer to consistently and persistently as the abuser. It just seems like a very strange way to try to protect a child. But but that's but that's how it's done. That was how it was done with the French. No, I understand. Excuse me. I understand that you may have a right to. And we'll have to decide this, whether you have a right. And it is the appropriate course under American law and under the Hague Convention for this court to do whatever it can do to try to protect the child, including have a further proceedings in the district court, including ordering Mr. Bias to bring the child back to New York. The likelihood of any of that actually protecting the child seems to me a long shot at best compared to whatever prospects there may be in Ecuador to get the Ecuadorian courts to intervene. If the child is, in fact, unsafe and if the procedures that were agreed to by the parties to try to protect the safety of the child are not being complied with it. You know, that's all I'm saying here. It just seems like a very strange thing that no one is asking the court that would actually have not just some legal authority to enter orders to the father, but to actually enforce those orders and see to it that they are appropriately that whatever order is entered is appropriately enforced. But that's that's it's your choice and your client's choice. And you're here and we have to decide what the legalities are. While if this case is remanded, the court cannot only decide whether Ms. Castro can seek Ecuadorian help in the court system, but also whether that will be effective. Remember, these things have to be enforceable. Can the Ecuadorian courts actually protect the child? And also, while this is going on, it's quite possible that knowing that this court system is looking at him, then Mr. Castro, who is found to have abused the child in multiple ways, not just physically, but mentally, emotionally, neglect, dangerous situations, is probably being more careful because he knows that this is not resolved. Thank you, counsel. Your time has long expired. We'll reserve decision. And that will conclude our argument for today. I will ask the clerk to adjourn court. Court sents adjourned.